**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| FREDERICK DAVENPORT, | : | |
| Plaintiff, | : | Case No. 3:06CV402 |
| vs. | : | District Judge Thomas M. Rose<br>Magistrate Judge Sharon L. Ovington |
| MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration, | :<br><br>: | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

## I. INTRODUCTION

Plaintiff Frederick Davenport suffers from multiple medical problems including, to name a few, cardiac disease, poorly controlled hypertension, and renal disease with renal failure. In early September 2002, his already significant medical problems deteriorated, causing him to suffer a heart attack. Fortunately, he received timely hospital medical care, and he was discharged later that month.

On September 16, 2002, Plaintiff turned to the Social Security Administration for financial assistance by applying for Supplemental Security Income (SSI) and Disability

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

Insurance Benefits (DIB). He asserted in his applications that beginning on January 1, 2002, his medical problems precluded him from performing any significant paid job.

After initial administrative denials, his DIB/SSI applications – along with medical records and other documents – proceeded to a hearing before Administrative Law Judge (ALJ) Melvin A. Padilla. Plaintiff and a vocational expert testified during the ALJ's hearing. (Tr. 480-511). In a later written decision, the ALJ concluded that Plaintiff's medical problems did not constitute a "disability" within the meaning of the Social Security Act. (Tr. 16-28). The ALJ's non-disability determination and resulting denial of benefits became the final decision of the Social Security Administration. Such final decisions are subject to judicial review, *see* 42 U.S.C. §405(g), which Plaintiff is now due.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #11), Plaintiff's Reply (Doc. #12), the administrative record, and the record as a whole.

Plaintiff seeks an Order reversing the ALJ's decision and remanding for an award of benefits, or, at a minimum, an Order remanding this case to the Social Security Administration to correct certain errors. The Commissioner seeks an Order affirming the ALJ's decision.

## II. ADDITIONAL BACKGROUND

Plaintiff's age (forty-six) on the date of his claimed disability onset placed him in the category of a "younger person" for purposes of resolving his benefits applications.

*See* 20 C.F.R. §404.1563(c). When the ALJ issued his decision, Plaintiff's age (fifty-one) placed him in the category of a person "closely approaching advanced age." *See* 20 C.F.R. §404.1563(d).

Plaintiff's Statement of Errors indicates that he "has a high school equivalent education, although it took him four times to pass the test." (Doc. #8 at 2). His past employment has involved work as an industrial painter, maintenance worker, grounds keeper, foundry worker, production laborer, fast food cook, steamer, and cement pourer. *Id*. at 3 (and record citations therein).

For many years Plaintiff has suffered from poorly controlled high blood pressure. *Id*. His admission to the hospital on September 3, 2002 was primarily due an acute myocardial infarction. (Tr. 166). Secondary diagnoses included hypertensive heart and renal disease, atherorsclorsis[2] of the renal artery, and coronary arteriorscelrosis. (Tr. 166). Among the treatment procedures he underwent were an angioplasty or atherectomy of non-coronary vessel(s), left heart cardiac catherization, and infusion of non-coronary artery stent or stents. (Tr. 166, 172-73, 352). Records upon his discharge from the hospital on September 6, 2002, lists the following:

DISCHARGE DIAGNOSIS:

1. Acute myocardial infarction secondary to occlusion of second diagonal branch of the LAD.

---

[2] Atherorsclorsis is the most common form of arteriosclerosis, a disease marked by thickening and hardening arterial walls. *See* Taber's Cyclopedic Medical Dictionary at 184 (19th Ed. 2001).

2. Severe renal artery stenosis.

3. Hypertensive crisis.

4. Successful PTRA and stenting of the left renal artery.

5. Hypertensive cardiovascular disease.

(Tr. 167).

Plaintiff explains in his Statement of Errors that "his recovery did not go as well as hoped. He was seen in the Emergency Room for chest pain September 26, 2002 where his blood pressure was 210/129. He was seen in the emergency room again November 17-18, 2002, for chest pain. Again his blood pressure was extremely high, at 206/119. After three hours, the reading was still 186/129. He was diagnosed with uncontrolled hypertension and referred to Dr. Graor for follow-up." (Doc. #8 at 3).

Plaintiff testified during the ALJ's hearing that he was disabled by his heart attack; he also explained, "I was already dealing with high blood pressure they were seeing kidney problems...." (Tr. 483). He described his high blood pressure as uncontrolled and chronic. (Tr. 484, 485). If his blood pressure gets "real high," he experiences blurry vision. (Tr. 501). He also testified that he has stent in each kidney. (Tr. 485, 491, 500). The medicine he takes for his kidneys requires him to go to a restroom one or twice every ½ hour to hour. (Tr. 501).

Regarding his arterial disease, Plaintiff testified:

> My arteries clog up. I'm weak all the time. The medicine that I take keeps me weak also and lightheaded and dizzy. I have cramps in my legs all the time. My ankles swell up all the time.

(Tr. 486). He experiences sharp chest pain around his heart that shoots down his arms. (Tr. 490-91). He treats these problems with heart medication, and he has two stents in his leg. (Tr. 485, 491). Despite those stents, the bottom of his leg and his ankles and feet still swell. (Tr. 491).

Plaintiff estimated that he can walk only one block before needing to sit and rest. (Tr. 491). He cannot stand for more than one hour. If uses a comfortable chair, he is able to sit for about thirty-forty minutes. (Tr. 492). He walks for exercise "maybe twice week." (Tr. 496). According to Plaintiff, his cardiologist, Dr. Graor, has limited him to lifting no more than five pounds, and standing no more than one hour. (Tr. 500).

Turning to the other evidence in the administrative record, the parties have provided informative and detailed descriptions of that evidence. *See* Doc. #8 at 1-8; Doc. #11 at 1-8. In light of this, and upon consideration of the complete administrative record, there is no need to reiterate or expand upon the parties' descriptions.

Plaintiff frames the main issue as follows:

> Whether Administrative Law Judge Padilla erred at a matter of law in his evaluation of residual functional capacity where treating physician opinions are supported by the objective medical record and the non-examining physician opinions are not substantial evidence to support the administrative law judge's findings?

(Doc. #8 at 1).

## III. ADMINISTRATIVE REVIEW

The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its

statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant (1) from performing his or her past job, and (2) from engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986). A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability. *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

Social Security Regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence. *See* Tr. 23-31; *see also* 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).[3] Although a dispositive finding at any Step terminates the ALJ's review, *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the evaluation answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

[3] The remaining citations will identify the pertinent DIB Regulations with full knowledge of the corresponding and equally applicable SSI Regulations. *See Colvin*, 475 F.3d at 730.

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

In the present case, the ALJ found at Step 4 that Plaintiff could perform a reduced range of medium exertional work.[4] The ALJ summarized his assessment as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift up to fifty pounds occasionally and twenty[-]five pounds frequently; he is limited to inside work in a temperature-controlled environment; simple tasks not requiring extended periods of concentration; low stress jobs with no dealing with the public and no production quotas; minimal contacts with supervisors and coworkers (no over-the-shoulder supervision and no teamwork); and no jobs in contact with drugs or alcohol.

(Tr. 21). This assessment, along with the ALJ's findings throughout his sequential evaluation, led him to ultimately conclude that Plaintiff was not under a disability and hence not eligible for DIB or SSI. (Tr. 18-28).

## IV. JUDICIAL REVIEW

Judicial review of an ALJ's decision determines whether substantial evidence in the administrative record supports the ALJ's factual findings. *Bowen v. Comm'r. of Soc. Sec*., 478 F3d 742, 745-46 (6th Cir. 2007). "Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a

[4] The Regulations define medium work as involving the ability to lift "no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds...." 20 C.F.R. §404.1567(c).

conclusion.'" *Bowen*, 478 F3d at 746 (citing in part *Richardson v. Perales,* 402 U.S. 389, 401 (1977)). It consists of "'more than a scintilla of evidence but less than a preponderance..." *Rogers v. Comm'r. of Soc. Sec*., 486 F.3d 234, 241 (6th Cir. 2007).

Judicial review for substantial evidence is deferential not *de novo*. *See Cruse v. Commissioner of Social Sec*. 502 F.3d 532, 540 (6th Cir. 2007); *see also Cutlip v. Secretary of Health and Human Servs*., 25 F.3d 284, 286 (6th Cir. 1994). The Court's agreement or disagreement with the ALJ's findings plays no role in the substantial evidence review, and no significance attaches to contrary evidence in the record, if other substantial evidence supports the ALJ's findings. *Rogers*, 486 F.3d at 241; *see Her v. Comm'r. of Soc. Sec*., 203 F.3d 388, 389-90 (6th Cir. 1999).

Still, reviewing for substantial supporting evidence is not the stopping point of judicial analysis. Courts also examine the administrative decision to determine whether the ALJ applied the correct legal criteria. *See Bowen*, 478 F.3d at 746. If the ALJ does not, the decision may not be not upheld even when substantial evidence supports the ALJ's findings. *See id*. For example, a decision will not be upheld where the ALJ failed to follow apply the standards mandated by the Social Security Regulations and where that failure prejudices a claimant on the merits or deprives the claimant of a substantial right. *See Bowen*, 478 F.3d at 746 (and cases cited therein). Indeed, through *Bowen* and other recent Sixth Circuit cases, an ALJ's failure to apply the correct legal criteria – at least when evaluating medical source opinions – mandates further judicial review for harmless error. *Bass II v. McMahon*, 499 F.3d 506, 512 (6th Cir. 2007); *see Bowen*, 478 F.3d at

747-49; *see also Wilson*, 378 F.3d at 547-49 (offering examples of possible *de minimis* errors). Consequently, if the ALJ's failure to apply the correct legal criteria was harmless, the decision "should be affirmed." *See Bass II*, 499 F.3d at 512 (and cases cited therein).

## V. DISCUSSION

### A. The Parties' Contentions

Plaintiff contends that the ALJ erred (1) by rejecting the opinions of his treating cardiologist Dr. Graor and his treating family physician Dr. Schear, and (2) by accepting the opinions of non-examining record-reviewing physicians for the Ohio Bureau of Disability Determination. This, according to Plaintiff, deprived the ALJ's decision of substantial evidence, especially his finding that Plaintiff could perform a reduced range of medium exertional work.

The Commissioner contends that the ALJ properly conducted the required five-Step sequential evaluation and that substantial evidence supports the ALJ's decision. The Commissioner maintains that the ALJ properly declined to grant controlling weight, or even significant weight, to the opinions of Drs. Graor and Schear because their opinions were inconsistent with other substantial evidence, including the opinions of the Ohio BDD physicians – Dr. Hinzman and Dr. Starkey.

### B. Medical Source Opinions

ALJs are required to evaluate every medical opinion of record regardless of its source. *See* 20 C.F.R. §404.1527(d). The required evaluation first focuses on treating

physicians or psychologists, whose opinions are entitled to controlling weight under the treating physician rule as long as they are (1) well supported by medically acceptable data and (2) not inconsistent with other substantial evidence of record. 20 C.F.R. §404.1527(d)(2); *see Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004). When these requirements are not met, the treating physician rule does not apply. *Id*. In this circumstance, the evaluation has only just begun, because ALJs must continue to weigh the treating source's opinion under the following factors: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source – in determining what weight to give the opinion." *Wilson*, 378 F.3d at 544 (discussing §404.1527(d)).

The Regulations contain a mandatory procedural requirement, stating, "We will always give good reasons in our notice of determination of decision for the weight we give [the claimant's] treating source's opinion." *Wilson*, 378 F.3d at 544 (quoting 20 C.F.R. §404.1527(d)(2)). This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *See Wilson*, 378 F.3d at 544. In addition, the reason-giving requirement "exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy to that she [or he] is not, unless some reason for the agency decision is supplied." *Id*. (quoting in part *Snell v.*

*Apfel*, 177 F.3d 125, 134 (2nd Cir. 1990)).

The Regulations further require ALJs to weigh non-treating medical source opinions under the same factors applicable to treating medical sources – supportability, consistency, specialization, *etc*. The Regulations appear to emphasize this requirement by reiterating it no less than three times. *See* 20 C.F.R. §404.1527(d) ("we consider all of the following factors in deciding the weight to give any medical opinion...."); *see* also 20 C.F.R. §404.1527(f)(ii) (factors apply to opinions of state agency consultants); §404.1527(f)(iii) (same as to medical experts' opinions); Social Security Ruling 96-6p, 1996 WL 374180 at *2 (same).

**C. Analysis**

Reviewing the ALJ's decision to determine whether he applied the correct legal criteria to his evaluation of the medical source opinions, the first reference to the legal criteria appears in the ALJ's conclusory statement that he "considered the opinion evidence in accordance with the requirements of 20 CFR [§§]404.1527 and 416.927 and SSRs 96-2p, 96-5p and 96-6p." (Tr. 21). This statement by itself is not error and indicates that the ALJ's evaluation began on the correct track. Indeed, the ALJ's statement confirms what is normally presumed – that an ALJ's training and experience provides him or her with the knowledge of the correct legal criteria. Yet, the issue for judicial review does not stop at the ALJ's conclusory reference to the requirements of these Regulations. His decision must be studied to determine whether he conducted the evaluation required by these Regulations – again, whether he actually applied the correct

legal criteria required by these Regulations.

Doing so in this case reveals that he evaluated the opinions of treating cardiac specialist Dr. Graor and treating family physician Dr. Schear under the two-step weighing procedure required by the Regulations. Although the ALJ should be credited for describing the medical records in some detail, *see* Tr. 18-26, the ALJ's decision cannot be reasonably read as first determining whether any treating physician's opinion was due controlling weight, and if not, determining next whether the treating physician's opinion was due any weight. *See id*. Speaking through a Ruling, the Commissioner instructs:

> Adjudicators must remember that a finding that a treating source is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that it is not entitled to 'controlling weight,' not that the opinion must be rejected. Treating source medical opinions must still be weighed using all of the factors provided in 20 CFR 404.152. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

Social Security Ruling 96-2p, 1996 WL 374188 at *4. The most that can be gleaned from the ALJ's decision is that he applied isolated regulatory factor(s) to the opinions of Plaintiff's treating physicians, Drs. Graor and Schear. *See, e.g.*, Tr. 21-23. Such a review by the ALJ failed to follow the two-step weighing procedure mandated by the Regulations, 20 C.F.R. §404.1527(d)(2)-(5), and by Social Security Ruling 96-2p. As recently emphasized by the United States Court of Appeals for the Sixth Circuit – even when the treating physician rule does not apply, "in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great

deference, its non-controlling status notwithstanding." *Rogers*, 486 F.3d at 242.

In addition, the ALJ relied on the opinions of the Ohio BDD physician who reviewed Plaintiff's record to support his Residual Functional Capacity assessment. *See* Tr. 21. The ALJ did not state what regulatory factor convinced him to credit these non-treating physicians. *See* Tr. 18-16. The Commissioner reminds, speaking through her Ruling:

> The Regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker. For example, the opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources.
>
> For this reason, the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Councils levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist. The adjudicator must also consider all other facts that could have a bearing on the weight to which an opinion is entitled, including any specialization of the State agency medical or psychological consultant.

Social Security Ruling 96-6p at Policy Interpretation.

In addition, by not explaining why he credited these non-treating record-reviewing physicians, the ALJ failed to comply with the regulatory requirement of a meaningful explanation for the weight placed on such medical source opinions. The Regulations

mandate, "Unless the treating physician's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us." 20 C.F.R. §404.1527(f)(2)(ii) (emphasis added); *see* 20 C.F.R. §416.927(f)(2)(ii). The ALJ's decision contains no indication that he did so in this case.

There remains the possibility that the ALJ's errors were harmless. *See Wilson*, 378 F.3d at 546-47. If harmless, the errors do not require reversal, and the ALJ's decision must be affirmed. *See Bass II*, 499 F.3d at 512. *De minimis* or irrelevant errors can be deemed harmless. *See id*; *see also Wilson*, 378 F.3d at 547. Yet, harmless error is not shown simply because a favorable administrative decision (granting a claimant's DIB/SSI application) was unlikely. *Wilson*, 378 F.3d at 547.

The ALJ's errors were not harmless. Even a cursory review of the opinions provided by Plaintiff's treating specialist, Dr. Graor, reveals that he provided many supporting reasons for his opinions. *See* Tr. 338-43. Similarly, Dr. Schear, who had treated Plaintiff for many years, provided opinions similar to Dr. Graoar's, and with some supporting reasons. *See* Tr. 372-76. In addition to these physicians' reasons, the record contains a well-documented history of Plaintiff's cardiac, arterial, and renal disease, and poorly controlled (at best) hypertension, the opinions of these physicians were "not so patently deficient" that they could not have been accepted. *See Wilson*, 378 F.3d at 547.

Accordingly, Plaintiff's challenges to the ALJ's decision are well taken.

## VI. REMAND IS WARRANTED

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits. Under Sentence Four of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case, because the evidence of disability is not overwhelming, and because the evidence of a disability is not strong while contrary evidence is weak. *See Faucher*, 17 F.3d at 176.

Plaintiff, however, is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of §405(g) due to problems set forth above. On remand, the ALJ should be directed to re-evaluate Plaintiff's disability claims under the five-Step sequential evaluation mandated by the Regulations and case law – including, but not limited, to a re-evaluation of the medical source opinions and a re-assessment of Plaintiff's residual functional capacity – and to determine anew whether Plaintiff was under a disability and thus eligible for DIB and/or SSI.

Accordingly, the case should be remanded to the Commissioner and the ALJ for further proceedings consistent with this Report and Recommendations.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Frederick Davenport was under a "disability" within the meaning of the Social Security Act;

3. This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. §405(g) for further consideration consistent with this Report; and

4. The case be terminated on the docket of this Court.

February 15, 2008

s/Sharon L. Ovington
Sharon L. Ovington
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).